

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

January 12, 2007

The Honorable Rodney Ellis
Chair, Committee on Government Organization
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0500

Re: A school district's authority to delegate food products and supplies purchases to a food service management company (RQ-0509-GA)

Dear Senator Ellis:

You ask about a school district's authority to delegate food products and supplies purchases to a food service management company.[1]

The federal government invites entities that qualify as "school food authorities"[2] to participate in national school nutrition programs, including the National School Lunch Program, the School Breakfast Program, and the Summer Food Program. *See generally* 42 U.S.C.A. §§ 1751–1769i, 1773 (West 2006); 7 C.F.R. §§ 210.1–.32, 220.1–.21, and 225.1–.20 (2006). These programs offer school food authorities grants-in-aid to help the authorities better provide reduced or no-cost and nutritious meals to the nation's students. *See, e.g.,* 42 U.S.C.A. § 1751 (West 2006) (Congressional declaration of policy for the School Lunch Program). Relevant to your question, federal rules permit school food authorities to contract with food service management companies,[3] which manage an authority's food service operations in one or more of the authority's schools, so long as the authority adheres to federal and state regulations controlling such contracts. *See, e.g.,* 7 C.F.R. § 210.16 (2006). Your question pertains to an opinion this office issued that discussed the

---

[1]*See* Letter from Honorable Rodney Ellis, Chair, Committee on Government Organization, Texas State Senate, to Honorable Greg Abbott, Attorney General of Texas (July 10, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]A school food authority is defined by relevant federal regulations as "the governing body which is responsible for the administration of one or more schools; and has the legal authority to operate the Program therein or be otherwise approved by [the Food and Nutrition Service, U.S. Department of Agriculture] to operate the Program." 7 C.F.R. § 210.2 (2006). In Texas, an independent school district is, for example, a school food authority as the district is charged with the "duty to govern and oversee the management of the public schools of the district." TEX. EDUC. CODE ANN. § 11.151(b) (Vernon 2006). *See also id.* § 33.901 (certain school districts required to participate in breakfast program).

[3]"Food service management company" is defined as "a commercial enterprise or a nonprofit organization which is or may be contracted with by the school food authority to manage any aspect of the food school service." 7 C.F.R. § 210.2 (2006).

state procedures a Texas school district must follow when contracting with a food service management company. *See* Request Letter, *supra* note 1, at 1; Tex. Att'y Gen. Op. No. DM-14 (1991).

In 1991, this office considered whether it was permissible for a school district to delegate to a food service management company the authority to purchase food and supplies required under a food service management contract. *See* Tex. Att'y Gen. Op. No. DM-14 (1991) at 1. Specifically, DM-14 considered the lawfulness of "a procedure whereby the food service management company supervises the bidding process for the school district in conformity with section 21.901, but vests final decision-making authority in the board of trustees, 'either by review and approval of the process, or by a direct decision.'" *Id.* at 3–4. Examining then-applicable Education Code section 21.901,[4] which governed such a bidding process and vested authority over the process solely in a school district, this office determined that this procedure would constitute a delegation of the district's authority. *Id.* at 4.[5] Ultimately, the opinion concluded, such a "delegation" was not permitted:

> In the absence of statutory authorization, a public body may not delegate, surrender, or barter away statutory duties that involve the exercise of judgment and discretion. The power to make purchases for a public body has been included among such nondelegable powers.

*Id.* at 4 (citations omitted). You question this conclusion. *See* Request Letter, *supra* note 1, at 2.

You note that, relying on Attorney General Opinion DM-14, the Texas Department of Agriculture—which oversees Texas's participation in the federal school nutrition programs—has prohibited school districts from "contracting with the food service management company to purchase food and supplies used in the performance of its obligations under a food service management agreement." Request Letter, *supra* note 1, at 1. You understand "that the statute [former Education Code section 21.901] governing purchasing by school districts at the time DM-14 was issued has been deleted from the Education Code." *Id.* at 2. You also understand "that subsequent to issuance of DM-14, the Texas Supreme Court in 1997 clarified the standards that courts should apply in order

---

[4]*See* Act of June 2, 1969, 61st Leg., R.S., ch. 889, § 1, sec. 21.901, 1969 Tex. Gen. Laws 2735, 2936, *amended by* Act of May 18, 1977, 65th Leg., R.S., ch. 472, § 1, 1977 Tex. Gen. Laws 1224, 1224–25, *amended by* Act of May 15, 1981, 67th Leg., R.S., ch. 259, § 1, 1981 Tex. Gen. Laws 668, 668, *amended by* Act of May 24, 1985, 69th Leg., R.S., ch. 456, § 1, 1985 Tex. Gen. Laws 1613, 1613, *amended by* Act of Apr. 24, 1989, 71st Leg., R.S., ch. 54, § 1, 1989 Tex. Gen. Laws 368, 368–69, *amended by* Act of May 23, 1989, 71st Leg., R.S., ch. 814, § 5, 1989 Tex. Gen. Laws 3722, 3725–26, *amended by* Act of Aug. 25, 1991, 72d Leg., 2d C.S., ch. 8, § 3.04, 1991 Tex. Gen. Laws 137, 158, *amended by* Act of May 21, 1993, 73d Leg., R.S., ch. 750, § 1, 1993 Tex. Gen. Laws 2945, 2945, *amended by* Act of May 29, 1993, 73d Leg., R.S., ch. 757, § 1, 1993 Tex. Gen. Laws 2953, 2953, *repealed by* Act of May 27, 1995, 74th Leg., R.S., ch. 260, §§ 1, 58, 1995 Tex. Gen. Laws 2207, 2425–26, 2498.

[5]In 1995 the Legislature reenacted and revised titles 1 and 2 of the Education Code, repealing section 29.901 and replacing it with section 44.031. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, §§ 1, 58, 1995 Tex. Gen. Laws 2207, 2425–26, 2498.

to determine whether a delegation is permissible." *Id.* (citing *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen,* 952 S.W.2d 454 (Tex. 1997)). Thus, you ask "whether the opinion expressed in DM-14 effectively prohibiting a food service management company from purchasing food and supplies under a food service management contract is the proper interpretation of applicable state law." *Id.*[6]

Before addressing your precise question, we make two preliminary observations. First, we understand your question to concern a situation in which a school district contracts with a food service management company for that company to provide the district with food and supplies as a part of its services. *See id.* at 1 (describing "fixed meal rate" contracts). The situation you describe differs from the one in DM-14 in which a school district attempted to contract with a food service management company for the company to use the district's food and supplies and to supervise the purchase of those food and supplies on the school district's behalf. *See* Tex. Att'y Gen. Op. No. DM-14 (1991) at 3–4; *see also* Request Letter, *supra* note 1, at 1 (describing "cost reimbursement plus fee" contracts).

Second, DM-14 predates the line of cases represented by *Boll Weevil*—where the Supreme Court expounded the delegation doctrine for delegations to private entities. The essence of the delegation case law on which DM-14 relied was discretion. That line of cases held that discretionary duties statutorily entrusted to an officer or entity may not be subdelegated to another (whether public or private) in the absence of legislative authorization. *See Guerra v. Rodriguez,* 239 S.W.2d 915, 920 (Tex. Civ. App.—San Antonio 1951, no writ). However, DM-14 did not have the benefit of the delegation clarifications under *Boll Weevil* and its progeny. Under *Boll Weevil,* there is no government delegation to a private entity unless the government is delegating the authority to set public policy or the like. *See FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 880 (Tex. 2000); *Boll Weevil,* 952 S.W.2d at 466–75.

We begin with the issue of whether there is a statutory prohibition on a school district contracting with a food service management company for that company to provide food and supplies as part of its services. In this respect, the requirements governing a district's purchasing contract that were formerly located at Education Code section 21.901 are now found, with certain modifications, at Education Code section 44.031. *See* TEX. EDUC. CODE ANN. § 44.031 (Vernon 2006).[7] Section 44.031 governs all school district purchasing contracts, except for "contracts for the purchase of produce[8] or vehicle fuel, valued at $25,000 or more in the aggregate for each 12-month period." *Id.* § 44.031(a) (footnote added). This section provides that such contracts must provide the best value for the district, and they must be made by either competitive bidding, competitive sealed proposal, request for proposals, a catalogue purchase, an interlocal contract, or a design-build contract. *See*

---

[6]You do not ask and we do not address whether the food service management contracts contemplated here comport with federal statutory and regulatory requirements.

[7]*See supra* note 4.

[8]For this opinion's purposes, we will assume that a contract for "produce" is not identical to the purchase of goods and services procured by means of a food service management contract.

*id.* There is, however, nothing in this section that requires a school district to contract separately for the underlying goods used by vendors from which the district purchases services.

As the Legislature has not chosen by statute to require a school district to contract separately for the underlying goods, we must next consider whether the delegation doctrine forbids such an arrangement. The delegation doctrine, as modified by *Boll Weevil* and its progeny after DM-14, holds that a constitutional delegation question arises only if the state or a political subdivision purports to grant a private entity "a public duty and the discretion to set public policy, promulgate rules to achieve that policy, or ascertain conditions upon which existing laws will apply." *FM Props. Operating Co.*, 22 S.W.3d at 880. Assuming that the district is not attempting to contract away its authority to choose to participate in the federal programs, a school district's contract with a food service management company does not confer on the company "a public duty and the discretion to set public policy, promulgate rules to achieve that policy, or ascertain conditions upon which existing laws will apply." *Id.* Therefore, a school district's food service management contract like you have described does not implicate the delegation doctrine as modified by *Boll Weevil* and its progeny, and the question of its constitutionality does not arise.

We must note however, that a school district's ability to contract with a food service management company is still subject to the competitiveness requirement of Education Code section 44.031. That section still requires that a school district award such a contract in the competitive method listed in subsection 44.031(a) that "provides the best value for the district." TEX. EDUC. CODE ANN. § 44.031(a) (Vernon 2006). The fact that *Boll Weevil* and its progeny do not require a school district to contract separately for underlying goods does not alleviate a school district's responsibility under section 44.031 to award its contracts in a competitive manner.

## S U M M A R Y

School districts participating in federal school nutrition programs may contract with food service management companies, which manage the district's food service operations in one or more of the district's schools, so long as the district adheres to federal and state regulations controlling such contracts. School district contract purchases, whether for goods or services, are governed by Education Code section 44.031, which does not require a school district contracting with a company for the company's services to contract separately for the underlying goods a company may use in providing its services. Further, the delegation doctrine as modified in *Boll Weevil* and its progeny does not require a school district to contract separately for underlying goods. Thus, when a school district contracts competitively with a food service management company that merely permits or requires the company to provide food as a part of its services, a school district is not violating a statutory duty or delegating a governmental function under state law.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

NANCY S. FULLER
Chair, Opinion Committee

Daniel C. Bradford
Assistant Attorney General, Opinion Committee